314-0301, People of the State of Illinois, Appellate, by Thomas Arado, v. Clyde Bradley, Appellant, by Christopher Bennett. Mr. Bennett? May it please the Court, good afternoon, Counsel, Your Honors. My name is Chris Bennett from the Office of the State Appellate Defender, and I represent the Appellant, David Fisher. With this Court's permission, my plan is to focus on... That's a different case. Client. That's Clyde Bradley. Did I say David Fisher? Yes. Oh, my gosh. Sorry about that. That's okay. Back-to-back argument. That shows you wouldn't. Appellant, Clyde Bradley. With this Court's permission, my plan is to focus on why the claims in Bradley's petition make a substantial showing of multiple constitutional violations, and why post-conviction counsel failed to comply with Supreme Court Rule 651C duties. In this case, every prior attorney that has been appointed to represent Bradley has provided him deficient performance. Direct appeal counsel provided ineffective assistance by failing to raise a meritorious issue, and by improperly presenting the trial court's error in not allowing the jury to hear from multiple witnesses that the complainant had a financial motive to fabricate the allegations against Bradley. Trial counsel failed to call numerous relevant witnesses or fully proffer their testimony. And post-conviction counsel failed in his duties to attach required affidavits from those proposed witnesses. Whether it is for an evidentiary hearing or further second-stage proceedings with the appointment of new counsel, the circuit court's dismissal of the petition should be reversed. Starting with direct appeal counsel's ineffectiveness, Bradley's defense theory centered on another individual causing the injuries to the complainant, Talitha Parker. Minutes before a trial started, the state sought to prevent Bradley from presenting key evidence in support of that theory. One, that Parker had a large drug debt. Two, she made false accusations of sexual assault against multiple co-workers in an attempt to shake down her former employers for money to satisfy that debt. Three, when those plans failed, she falsely accused Bradley of the incident offense. And four, after he was arrested on the incident offense, she stole $2,500 with the help of Jarell Newbill from Bradley's bank account. So what motive would she have to blame her husband for this financial motive? She had a substantial drug debt in another town, and she was going from employer to employer. So how was having her husband thrown in jail going to benefit her financially? Well, if you actually take a look at the representations in the investigator's notes, she kept trying to get this money from her husband, and he kept saying, I want to go with to pay the debt, because he wants to make sure it actually gets paid and it's not used for illicit drug use. He doesn't do that. She has him locked up, and then she steals the money via the help of Jarell Newbill. Despite there being relevant evidence that should have been presented regarding this financial motive, the trial court prevented Bradley from questioning Parker on the false assault allegations regarding her co-worker, Brian Trancitella and JoLynn White, and the Jarell Newbill evidence. The trial court erred in preventing Bradley from presenting a full and robust defense. On direct appeal and via the financial motive theory, appellate counsel raised the court's error in preventing evidence about Parker stealing Bradley's money with the help of Newbill. However, appellate counsel did not include the two salient false allegations that Parker had made against her co-workers. These are the most salient ones because these occur before she has Bradley arrested. So she's trying to get this money from two other sources before she's having him locked up, and then steals his money after he's locked up. Under what theory would those alleged prior bad acts be admissible? Under the financial motive theory, Your Honor. People v. Thompson makes it clear. It's a First District decision from 1979. The conviction was reversed. The defendant was prohibited from cross-examining the complainant about financial incentive the complainant had for accusing and testifying the defendant. People v. Provenza, 1922 Illinois Supreme Court decision. The State does not even address in its brief. People v. Hughes, this Court's decision from 1977. This is absolutely a line of questioning that can be done, and then presenting impeachment evidence. Should she deny having falsely accused people of sexual assault for money? Now, appellate counsel before the... Before any testimony offered about why she didn't want him, he offered to pay the debt and she would go with him, or he would go with her. Was there any, did he offer any reason why that, why she wouldn't accept that? In the investigator's notes, it just seems that she didn't want that to happen. Now, of course, that goes to potentially the third issue raised in the brief regarding post-conviction counsel's failure to get the requisite affidavits that he needs to under People v. Ennis. That in order to support a claim regarding failure to call witnesses, you need to support it with sworn affidavits. Post-conviction counsel didn't do that here, and this is not a case where post-conviction counsel's standing on the petition. This is a case where post-conviction counsel's representing that petition is, quote, well-supported with material that supports what he speaks about. Post-conviction counsel clearly was not aware of his People v. Ennis requirements, that is obviously pending in People v. Dupree, regarding whether you do need a sworn affidavit if you're raising trial counsel's ineffectiveness for not calling a witness. But at the time that post-conviction counsel was representing Bradley, People v. Ennis was the law, and you have to comply with the law in order to represent your client effectively under 651C. Turning back to appellate counsel's deficient performance by not raising false allegations as part of one cohesive right to present a defense argument on direct appeal. Had appellate counsel done this and presented this court with a right to present defense where, or denial of right to present a defense, where this court is informed that before she has the allegations and after the allegations, she is trying to satisfy a massive drug debt via whatever means she can, whether it's falsely accusing people of sexual assault or a work, whether it's having her husband locked up on false charges, or whether it's stealing his money once he's locked up. We submit that Bradley has made a substantial showing that appellate counsel was ineffective for not briefing this issue. It was his theory that somebody else beat her up? Yes. And then threw her bloody clothes in the trunk of his car? No, he said he readily admitted that afterwards he put her clothes to go throw them in the trash. So the damage happened that evening in Bloomington. She's beat up and then he took the clothes away the next day, I believe, or two days later. And this was not the only instance where appellate counsel provided ineffective assistance. Appellate counsel did not brief the trial court's heir in allowing the irrelevant fake gun of Bradley's  In arguing that the trial court did not err in allowing the exhibit back, and the appellate counsel did not perform efficiently by not raising the issue, the state on appeal misconstrues Parker's testimony. She never testified that she thought the fake gun was a real gun, nor did Parker ever testify that the fake gun was used during the charged offense, but that the fake gun had caused her not to come forward about the charges earlier. The state doesn't even address in the Castle test that the Illinois Supreme Court provides us on these collateral weapons that should not go back to juries. And under that test, the fake gun should not have been given to the jury. There was no reasonable strategy not to raise this on direct appeal. But how does a fake gun prejudice, a starter pistol prejudice, you know, Well, again, this was a preserved issue, Your Honor, and it has to be the state's burden to demonstrate it's harmless beyond a reasonable doubt on direct appeal. And I don't know how they would have shown that it was harmless beyond a reasonable doubt, because this is essentially a he said, she said case, who caused her injuries. So that would qualify her closely balanced prong, let alone the harmless error standard. So we argue that because of that, the outcome of direct appeal sure would have been different had this been raised on direct appeal. And that's the prejudice here, Your Honor. We have a successful, we have a meritorious claim that should have been raised on direct appeal and would have provided him a new trial had it been raised. People v. Jackson would be the support for that new trial. There are no further questions as to direct appeal counsel's effectiveness. Bradley alleged in his pro se post-conviction petition that trial counsel performed ineffectively by failing to call numerous witnesses to testify about Parker. About Parker, one, having a financial motive to fabricate the allegations against him, that was Brian Tranchitella, Joe Lynn White, Mark Burgess. Two, Parker having asked Bradley's daughter for $2,500 in hush money after his arrest, that's Taria Chalk. Parker, third, having a drug addiction at the time of the offense and of trial, and that would have come through Michael Linwood, Wesley Jackson's, and Jarell Newbill's testimony. But wasn't some of this testimony that, subject to the motion eliminated, that the trial court had granted barring testimony regarding Parker's, her sexual conduct, her employment history, including the termination, dismissals, or inter-workplace issues? So, I mean, this evidence had been barred. I mean, it really wasn't the trial counsel or public, I mean, it was, and I think on direct appeal, we had found that that was appropriate. So, I mean, it's something that couldn't have been raised, right? I mean, it's something that they couldn't have, even though he wanted counsel to do that, it had been barred already. And I understand there is a little overlap between direct appeal counsels and effectiveness in trial counsel, given this Brian Tranchitella and Joe Lynn, because direct appeal counsel simply dropped the ball in raising this under the rape shield exception. As this court correctly identified, this isn't a sexual assault case. You can't raise this under the rape shield exception, but it's... Well, you can bar any evidence because it's more prejudicial than pro. So, is it open season on prostitutes because, you know, she's a hooker, and so you can put in that she's a hooker in her court, that prejudices her case? No, and that's why direct appeal counsel was deficient here, because there was actually... The trial court erred in not allowing, via this pretrial motion eliminated, as Justice O'Brien identifies, the testimony about the false sexual assault allegations against her coworkers. They weren't trying to dirty her up because she made false sexual assault allegations as a credibility issue. She has a motive to falsely accuse the defendant, and that is absolutely relevant to a full and fair defense. And had a public counsel... I'm just having a hard time connecting those dots, so maybe you can help me, because, okay, you're saying she's trying to shake a couple guys down because she wants money. And I'm trying to connect that with a motive to falsely accuse Clyde Bradley of these beatings. So, the timeline here, and I do understand this is kind of a sordid case. You know, we have this timeline that from the fall of 2015 through the spring of 2016, she's making these false sexual assault allegations against her coworkers. Guess what also happens in the spring of 2016? She goes into a hospital and tells hospital workers, I just got in a gang fight in Bloomington. I got, as you said, Justice Smith, the tar beat out of me. We know that on the record, that's her statements to hospital staff. She's got this large, looming drug debt. The only way she can get out of it is to get money from Bradley. Bradley says, okay, then I'm going to pay it for you. She doesn't want to do that. Instead, she goes and has him locked up and steals the money from him. And again, this comes down to what was allowed to be presented by the defense at trial, because she denied she even had a drug debt. And so in order to have a full and fair defense, where you have two witnesses that are... Part of your burden in the PC is to show that, but for these errors, there's a reasonable probability that the trial result would have been different. Isn't it? That there's, at this stage, that there's a substantial showing of deficient performance, correct, under the Strickland standard. I mean, under the Direct Appeal Counsel argument would be a different result on direct appeal, whether the result would have... There's a substantial showing that the result would have been different. Under the trial counsel, yes. And we submit that a substantial showing has. I mean, this is one of those cases that's tailor-made for an evidentiary hearing, because a jury, or no jury, has ever heard all of this pretty darn credible evidence regarding a financial motive here. You have two co-workers who have no skin in this game other than she made false sexual assault allegations about us at work. Right around the same time, she's got a massive drug debt and where she's claiming to objective hospital staff that I'm getting beat up in Bloomington because of gang fights. Counsel, that's two minutes. Thank you. Regarding trial counsel's ineffectiveness, all four of these areas fall under acceptable areas of cross-examination. And if she were to deny these acts under impeachment, we have the drug addiction of a witness that's been long accepted. The state doesn't make any attempt to distinguish from the Illinois Supreme Court cases on point. The state admits that. Michael Linwood did provide impeachment evidence on the adultery. Just says that it's collateral, which, in fact, is not collateral because she actually denied to the jury that she had an affair. Now, she said to the jury, I told Bradley I had an affair, but she never admitted she had an affair to the jury. Michael Linwood would have personally observed her having an affair multiple times in the summer of 2006 when he impeached her on that. Finally, the state claims that this court's decision saying the evidence is overwhelming on direct appeal falls flat because, frankly, this court didn't have all of this other evidence. Oh, there's all this other financial motive testimony out there. And we submit that based on all of the evidence submitted as part of the post-conviction petition, substantial showing has been made both to direct appeal counsel's ineffectiveness and trial counsel's ineffectiveness. And then the alternative, post-conviction counsel sure didn't comply with Rule 651C under his and his duties to provide sworn affidavits. Were those sworn affidavits available? What we know is that, from the investigator's notes, they had contact information. We had names. We had people on witness lists, frankly. Transchutella and JoLynn White and Mark Burgess are all on witness lists before trial. These are people that we know exist. Same with Jarrell Newbill, right? We know Clyde Bradley exists. He's the defendant here. Even if you assume, oh, he went out and contacted everyone else and they wouldn't give us affidavits because I don't think we can because according to what his own words at the hearing were, were that these documents fully support everything. Petition's good to go. At a minimum, he has to get the defendant's affidavit about all this stuff. That's People v. Ross, this court, in 2015. He has to get that affidavit sworn. Otherwise, he's not compliant with 651C. If there are no further questions, we ask for a remand for a third stage evidentiary hearing or, on the alternative, further second stage proceedings with the appointment of new counsel. Thank you. Thank you. Mr. Arado. May it please the Court. Good afternoon, Your Honors. Counsel. There's a bit to unpack here. First, regarding 651C, there's a presumption that counsel acted within these requirements, including a presumption that he attempted to get affidavits and was unable to do so. Even then, as we pointed out in brief either below or here, was the motion to dismiss based on the failure to attach affidavits. What we do have, though, is the investigator's notes, which is other evidence which the Supreme Court in Allen said is sufficient. What we have from that is no support at all regarding a financial motive by the victim. None of the employees who were supposedly shaken down had any statement, any evidence, anything at all about being asked for money. Neither did the employer say that they were shaken down or asked for money. So how were these witnesses going to advance the theory that she was asking or seeking money? They wouldn't. They were bad fire acts, and under the case law and the law at the time, they were not admissible. Same with this financial motive. There's no support in that other than Mr. Bradley's own bald assertions, and there's nothing that supports it. Regarding the fake gun, it was the indicia of authority, and the trial court even made a finding that was relevant to the jury's determination of whether the victim actually believed this was a working, functioning firearm. And I think the reasonable interpretation of her testimony was that when she was asked, is this a working gun, and she says yes, she believes it's a firearm and not simply a starter pistol. But even then, you could also look at it differently. Well, I will stop with that. As Your Honor has pointed out, you have to, they had the burden, the defendant had the burden of proving that this would have been more reasonable probability that the defendant's trial would have entered a different result had this evidence been presented. Well, what do we have as evidence? Blood spatter in the bedroom, on the comforter, on a poster, in the car. Her clothes, her DNA matches blood in various locations. It all supports her testimony regarding how she was beaten by the defendant, including the stick that was found in the Cadillac which she was driving. Contrary to the defense's argument, nothing would have changed the result had any of this evidence been presented because the physical evidence completely supported the victim's testimony. I would also note that the nurse Gustafson, who testified that the constellation of injuries were consistent with somebody who's been suffering from domestic violence, which brings up an interesting suggestion that the reason why she made the statement and why she testified as to why she told the nurse previously that she had been in a gang fight in Bloomington because that's what she and the defendant had discussed. And we know generally in domestic violence situations that that is not an unusual circumstance. There is simply nothing here that would suggest that there was anything that would have entered a different result. We otherwise stand on our brief for the remaining arguments if there's no other questions or any questions. Thank you, Your Honor. Thank you. Mr. Bennett, some rebuttal. Just briefly, Your Honors. Addressing the 651C issue, the state says, Allen, you don't need sworn affidavits. That's a first-stage case. You don't need sworn affidavits at the first stage, as the state concedes in their own brief. It wasn't dismissed at the first stage. Exactly. And at the second stage, the people behind this requires, when you are raising trial counsels in effectus for not calling a witness, you need to get affidavits or explain their absence, notarize, in fact. That didn't happen here. Regarding the financial motive that the state says isn't here, I don't know what could be more clear than the trial counsel's statements at the pre-trial motion to eliminate, laying out this financial motive for these false sexual assault allegations. Further, the state kind of wants to take the post-conviction petition piecemeal. Well, because this person's affidavit doesn't say, well, they falsely accused me of sexual assault, and then I learned that, well, she was doing this because she was trying to get money. No, the key piece to that is Bradley's investigator's notes, where he explains she was trying to get this money by falsely accusing people of sexual assault. The important part of their affidavits is that the false allegations of sexual assault occurred. And that these are two highly credible witnesses. These are not people that are connected to Bradley or Savage other than their employment. And that's why a third stage evidentiary hearing is so important in this case, because taken as true, which we have to. That's evidence that Talifa Parker had a financial motive to falsely accuse Clyde Bradley. And we know from Jarrell Newbill's... Other than stealing his money, yes. And then trying to shake them down more money and a car, according to Taria Chalk's investigator notes. That, I'll make this go away if you've given me even more money. Because she's already stolen the money via Jarrell Newbill. Then she's, in January of 2017, trying to get a car and more money from Bradley to make this go away. So the evidence here could not be more clear as to why an evidentiary hearing must occur in this case. We have a continuing criminal enterprise by this woman of accusing people of crimes. Your accusation is that counsel was ineffective for raising it. But it had been raised and it had been found to be inadmissible and on direct appeal. We affirmed that and said that these are prior bad acts, that it would not have been admissible. So I guess I'm trying to connect how not raising that is ineffective when it is something that has been deemed to have been inadmissible. So I'm struggling with that. I don't have a duty to do that. And I understand your difficulty in this case, Your Honor, because this is a lot of things going back and forth between trial counsel and direct appeal counsel's ineffectiveness. The reason why this court found the Tranchitella and White evidence inadmissible is because direct appeal counsel provided deficient performance by raising it solely under a rape shield exception. That was the only way they were trying to say this was admissible evidence. And we know it was actually admissible evidence under a financial motive theory. So this court's ruling on direct appeal that this evidence was barred under the rape shield, that's a correct ruling because this isn't a sexual assault case. But had direct appeal counsel connected the dots for us, A, B, C, D. Let me ask you this. Hypothetically speaking, if the trial judge was looking at this evidence the same way I would have, if I had been on there and said that's a show of financial motive, it's just prior to that act to tar up the complaining witness, and I'm not letting it in. Would that be the error on the trial judge's part? Well, it's not me saying that. B. Thompson in the First District in 1979 would be saying that. Well, they don't say any time the defendant alleges that this evidence supports a financial motive that the trial judge has got to agree with that and buy it. Well, if there is, in fact, evidence of a financial incentive, then yes, that would be an incorrect ruling. And the trial court erred here. Direct appeal counsel erred by not properly raising this on direct appeal. Trial counsel erred by not either calling certain witnesses or fully proffering their testimony, so it was fully developed for direct appeal. And post-conviction counsel provided unreasonable assistance by not conforming with his NS duties. This Court has no further questions. We ask for the relief requested in the briefs. Thank you for your time tonight. All right. Thank you, Mr. Jones. And thank you, Mr. Arado. This matter will be taken under advisement. A written disposition will be issued. We'll do a brief recess for the panel. Thank you for the next hearing.